ROSE GRIFFITHS, By her Guardian, Respondent,
v. F. D. CLIFT.

NEGLIGENCE.—EXCESSIVE DAMAGES.—NEW TRIAL.—Extent of injuries
    resulting from negligence is a question for the jury. Where evi-
    dence is conflicting, and even if damages awarded are large, the
    verdict will not be set aside unless palpably against evidence, or
    obviously the result of passion or prejudice.

INSTRUCTIONS.—SPECIFIC INSTRUCTIONS.—Where instructions, in gen-
    eral terms, state the law correctly, but a party desires more spe-
    cific instructions, he should ask the court to instruct the jury
    specifically upon the point.

APPEAL from a judgment of the third district court and
from an order overruling a motion for a new trial. The
opinion states the facts.

*Messrs. Bennett, Harkness & Kirkpatrick,* for the
appellant.

Cited: *Milwaukee, etc. R. R. Co.* v. *Kellogg,* 94 U. S.,
469; *Schaffer* v. *R. R. Co.,* 105 U. S., 249; *Hoag* v.
*Lake Shore R. R. Co.,* 85 Pa. St.; *Phillips* v. *Dicker-
son,* 85 Ill., 11; *Toledo R. R. Co.* v. *Muthersbaugh,* 71
Ill., 572; Mayne on Damages, p. 15; Addison on Torts,
10; 2 Greenleaf Ev. sec. 256; 3 Parsons Cont. 177, 35
N. Y., 210; 1 Am. Rep., 431; Wharton on Negligence,
sec. 78.

*Mr. Arthur Brown,* with whom were *Mr. E. B. Critch-
low,* and *Mr. D. C. McLaughlin,* for the respondent.

BOREMAN, J.:

The appellant, in December, 1883, left his horse, attached
to his buggy, unhitched in a thickly populated part of
Salt Lake City. The horse ran away, and in his flight ran
against the plaintiff, a school-girl, knocked her down, and
injured her. This action was brought to recover dam-
ages from appellant for his wrongful and negligent con-
duct in leaving his horse unhitched, and the consequent

injury to respondent. The cause was tried with a jury, and a verdict and judgment for $3,250 damages was rendered against appellant. A motion for a new trial being overruled, the cause was appealed to this court.

The appellant urges that the damages are excessive, and unwarranted by the evidence. He claims that there was no injury except to one finger, and that this was slight. The jury are to take all of the evidence together, and are the sole judges of the credibility of the witnesses, and of the weight of evidence. They may draw a conclusion different from that which we might draw, but, if there be evidence to support their conclusion, the court should not disturb it. There is evidence that the horse was not safe to be left unhitched, being too spirited; that appellant, upon returning from a drive on a very cold day in December, stopped in front of his residence, in a thickly populated part of the city, got out of the buggy, leaving the horse unhitched in the street in front of his dwelling, and went into the house; when he came out the horse and buggy were gone, and he saw them turning a corner a block and a half away; that, after continuing, they ran for another block, into the business part of the city; the horse struck the plaintiff, a school-girl of 10 years of age, who was crossing the street where it was usual to cross; that she was lifted about two feet into the air by the horse striking her, and then, falling to the ground, rolled over several times; that when picked up she was bleeding from the mouth and hand, and one finger was apparently broken; that while dressing her wounds she fainted—was dazed or unconscious—but, when conscious, complained greatly of being hurt badly; that, on examination half an hour afterwards, the top of her head was found to be bruised, and one arm, one knee, and a place on her back were bruised; (the physician who had charge of her case at the time had died before the trial took place); that respondent's hand was kept in a sling for some days after the accident; that prior to the hurt the health of the child was good; that she was bright in intellect, and possessed physical strength; was fond of playing with other children; was accustomed to recite pieces; that since the injury her

health has not been good; that after she was brought home she was delirous part of the time; that she has, since the occurrence, continually complained of being hurt about the bowels, and would hold her hand across her side when walking across the room; that after the accident she made complaint of internal pain, and her complaining has continued, more or less, from that time until the trial; that for a year or so before trial she was complaining of her back hurting her, and also her head and right eye; that she complained of the head hurting her at the time, but has been complaining of it more latterly; she begs not to be sent to school by reason of the pain in her head and eye; that since the accident she has not enjoyed playing with other children, as before that time, nor does she enjoy her recitations as formerly; that she has been ailing ever since the injury took place, and, about six or seven months prior to the trial, a spinal difficulty developed itself, which the physician calls curvature of the spine, and that it may have been caused by the accident, although generally it is the result of lack of vitality in the system, dating back to infancy or birth, and that it mostly is seen in scrofulous natures; the plaintiff does not appear to have been scrofulous, or to possess any lack of vitality, except such as was produced by the accident; that this curvature is a serious matter, and the chances are against the child recovering from it. No intervening cause is shown as likely or possible to have produced these different ailments.

It was a question for the jury whether the respondent has been and continued in a disabled condition since the accident, and whether the same is likely to continue, and whether such condition is the proximate, direct, natural, and probable consequence of the negligence of the appellant: 3 Suth. Dam., 722; 2 Thomp. Neg., 1100; *McLaughlin* v. *City of Corry*, 77 Pa. St., 109; *Pennsylvania R. Co.* v. *Hope*, 80 Pa. St., 373; *Hoag* v. *Lake Shore & M. S. R. Co.*, 85 Pa. St., 293.

We are not prepared to say that the jury were not authorized to conclude from the evidence that the respondent is in a disabled condition, as the direct and natural re-

sult of the accident; nor would we feel authorized to say that the verdict was excessive, should the matter of the curvature of the spine referred to be left out of consideration; for there is evidence to show that, without reference to this deformity, the respondent has been otherwise in bad condition, as the probable result of the negligence of appellant, and that such condition, it might reasonably be supposed, will continue for an indefinite length of time. The injury must proceed from, and be caused by, the wrongful act of the appellant; but the causation is not to be tested metaphysically, or by any occult principles of science, but rather as persons of ordinary intelligence apprehend cause and effect, and see one fact proceed from another: 1 Suth. Dam., 21.

If the verdict was large, it was not so unreasonably large as to justify this court in holding that it was the result of passion or prejudice on the part of the jury; and, in a case of this character, the rule of the law is that the verdict will not be set aside unless palpably against the evidence, or obviously the result of passion or prejudice. We do not see that either of these prerequisites exists in the case at bar: 2 Thomp. Neg., 1266. Where the injury is to the person, as it was in this case, and is permanent in its character, and entails bodily or mental pain and suffering upon the plaintiff, the courts will hesitate to disturb the verdict, although it may be very considerable: 2 Thomp. Neg., 1267.

The instructions to the jury laid down the law correctly, in general terms. If appellant desired a more specific declaration of the law, he should have requested an instruction covering the point: *Weisenberg* v. *Appleton*, 26 Wis., 56.

In the trial of this case the court had before it the respondent, and it saw and heard the witnesses, and, with these in remembrance, the motion for a new trial was overruled. We cannot say that the court erred.

The judgment and order of the lower court is affirmed, with costs.

ZANE, C. J., and POWERS, J., concurred.