[Civ. No. 6700. First Appellate District, Division One.—August 28, 1929.]

CLARENCE W. ROBERTS, Appellant, v. THE GRIF-FITH COMPANY (a Corporation), Respondent.

Brewton A. Hayne and Ernst M. Torchia for Appellant.

Gibson, Dunn & Crutcher and Norman S. Sterry for Respondent.

DOOLING, J., *pro tem.*—From a judgment of dismissal, entered pursuant to an order sustaining defendant's demurrer to plaintiff's complaint without leave to amend, plaintiff appeals.

The complaint, in substance, alleges that Lynwood is a city of the sixth class and plaintiff was and is a deputy marshal thereof; that defendant was and is a corporation, chiefly engaged in doing street work, and in connection therewith owned more than twenty mules. That on October 24, 1926, at the hour of 10 o'clock P. M., defendant carelessly and negligently allowed about twenty of its mules to run at large, without a keeper or other supervision, upon the public streets of Lynwood, thereby creating a public nuisance by unlawfully obstructing the free passage and use in the customary manner of said streets in violation of section 370 of the Penal Code; that it thereupon became the duty of plaintiff, as a deputy marshal, to abate such nuisance and while engaged with two other deputy marshals in driving such mules from the streets plaintiff was thrown by such mules violently to the ground and his left leg broken to his damage. The demurrer was both general and special.

It is not contended by respondent that under the circumstances alleged in the complaint plaintiff was not acting in the performance of his duty in endeavoring to remove the mules from the city streets; but respondent does contend that no actionable negligence is pleaded because there is no allegation that the mules were vicious or of scienter on the part of respondent, and that the negligence, if any, in permitting them at large was not the proximate cause of appellant's injuries. With these contentions we cannot agree. While there is a conflict of authority on the subject in the various jurisdictions, we are satisfied that the better rule is that it may be actionable negligence to permit horses or mules to run at large and untended on the streets of a municipality regardless of their vicious character or of scienter.

In *Goodman* v. *Gay*, 15 Pa. St. 188 [53 Am. Dec. 589], the court said: "The owner has no right, either by law or custom, to turn a horse loose in the streets of a city. All men know that a horse which has been stabled and well fed will, when turned out, run and plunge, and become dangerous in the midst of people. If one man has the right to turn out his horse, every man has the same right; and if the one-fourth of people who own horses in a city would turn them out on the streets, not only the women and children, but even the men would have to abandon them.

"There is no reported case in which it was held that a person who turned out his horse in the streets of London or New York was not answerable, if he ran over a child or a woman, unless the owner knew, when he turned him out, that he was vicious and prone to kick. But I may say that all horses are, when turned loose, more or less dangerous in confined streets; and all men know this. The gist of the action is that defendant did an act not sanctioned by law or custom, from which he must have known that injury might result."

To the same effect are *Dickson* v. *McCoy*, 39 N. Y. 400; *Hardiman* v. *Wholly*, 172 Mass. 411 [70 Am. St. Rep. 292, 52 N. E. 518]; *Baldwin* v. *Ensign*, 49 Conn. 113 [44 Am. Rep. 205]; *Doherty* v. *Sweetser*, 82 Hun, 556 [31 N. Y. Supp. 649]; *Wasmuth* v. *Buller* [33 N. Y. Supp. 108]; *Stern* v. *Hoffman Brewing Co.*, 26 Misc. Rep. 794 [56 N. Y. Supp. 188]; *Drew* v. *Gross*, 112 Ohio St. 485 [147 N. E. 757].

Of similar import are the following cases holding that it is actionable negligence to leave a horse or team untethered and unguarded on a public street: *Bowen* v. *Flanagan*, 84 Va. 313 [4 S. E. 724]; *Phillips* v. *De Wald*, 79 Ga. 732 [11 Am. St. Rep. 458, 7 S. E. 151]; *Griffiths* v. *Clift*, 4 Utah, 462 [11 Pac. 609]; *Pierce* v. *Connors*, 20 Colo. 178 [46 Am. St. Rep. 279, 37 Pac. 721]; *Rumsey* v. *Nelson*, 58 Vt. 590 [3 Atl. 484]; *Moulton* v. *Aldrich*, 28 Kan. 300.

Respondent relies on the English case of *Cox* v. *Burbridge*, 13 Com. B. (N. S.) 431 [143 Eng. Rep. 171], and the English cases following it, and the Indiana case of *Klenburg* v. *Russell*, 125 Ind. 596 [25 N. E. 596]. In *Healey* v. *P. Ballantine & Sons*, 66 N. J. L. 339 [49 Atl. 511], the Supreme Court of New Jersey expressly dis-

approved the case of *Cox* v. *Burbridge, supra,* in the following language: "Mr. Wood, commenting on the case of *Cox* v. *Burbridge,* says: 'The doctrine of this case does not commend itself to the court or profession, as being consistent with reason or sound policy. The horse was unlawfully in the highway. The child was lawfully there, and there seems to be no good reason why the owner or keeper of the horse should not be responsible for the injuries inflicted upon the child while the horse was so unlawfully at large.' (Wood, Nuis., p. 190.) Judge Redfield in discussing the case of *Cox* v. *Burbridge,* says that that case 'has created some discussion in England, and provoked some unfriendly criticisms, as it seems to us not altogether without reason. It seems almost incomprehensible that anyone should require proof that the owner of a horse was made aware of its propensity to do damage when roaming at large in the highway. If the horse was wrongfully in the highway, and did damage in consequence to any person or thing rightfully there, the owner or keeper should be responsible, as it seems to us.' (4 Am. Law Reg. (N. S.), pp. 140, 141.) It may be safely asserted that the decision of that case was contrary to the great weight of authority in this country, and it seems to us not sustained on principle or by preceding authority in England."

With this criticism of the principle of *Cox* v. *Burbridge* and those cases which have followed it we fully agree. It would be intolerable to permit such animals as horses, mules and cattle to roam untended and untethered on the public streets of incorporated cities and towns without holding the owners liable for the natural consequences of their being so at large.

While the precise question has not come before our appellate courts, the early case of *Ficken* v. *Jones,* 28 Cal. 618, 625, is instructive. In that case plaintiff was injured by a steer which was being driven with other cattle through Brannan Street in San Francisco. There was no evidence that the cattle were wild, untamed or vicious or that defendants had cause to believe they were so, but the court held that defendants were nevertheless bound to exercise care in driving them for the safety of people on the streets and would be liable for failure to do so which resulted in injury to person, saying: "The driving of cattle through the streets

of a city is attended with danger to persons who are of right there, and who can justly demand that the care, diligence and skill essential to their safety shall be commensurate with the necessities of the case.'' If the driving of cattle through city streets is attended with danger to persons the permitting of them to wander unattended is of necessity fraught with greater peril.

The Supreme Court of Ohio in *Drew* v. *Gross, supra,* said of a horse at large on the highway: ''What ordinary care demands depends always upon the circumstances of the case, and a primary factor among those circumstances is the fact whether the injury could or could not have reasonably been anticipated from the acts done or left undone by the defendant.''

 The real question in this case is whether the defendant could have reasonably foreseen that by allowing a band of twenty mules to be loose upon the streets an injury such as occurred to plaintiff might ensue. To that question there is only one reasonable answer. Anyone who has had experience with animals in herds or bands, however docile they may ordinarily be, must know the danger attendant upon frightening, alarming or startling them and must equally know how unaccountable their actions may sometimes be.

We conclude that the complaint stated a cause of action.

 Respondent insists, however, that the judgment should not be reversed because it was urged as a ground of special demurrer that the complaint was uncertain as to how or in what manner the accident occurred. It is claimed that this ground of special demurrer was well taken and since plaintiff did not ask leave to amend the judgment must be affirmed. The complaint in this regard, after alleging that the mules were negligently permitted to be at large on the streets of the town, contains the following averment: ''the plaintiff, without any negligence on his part, was by said mules, violently thrown upon the ground.'' Respondent's criticism of this allegation is that the verb ''thrown'' is too indefinite to indicate in what manner the accident occurred and would be perfectly consistent with the fact that appellant was attempting to ride one of the mules without saddle or bridle. We think this criticism is unduly hypercritical. Among the definitions of the verb ''to throw'' in Webster's New International Dictionary we find:

"To drive or impel by violence; to dash; force, to cause to fall; to prostrate; to cast down."

At least since the decision of *Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143 [35 Pac. 618, 619, 36 Pac. 407], it is the settled rule in California that negligence and proximate cause may be simply set forth, the classic example given in the Stephenson case being: "For that the defendant so negligently drove his horse and carriage that the same struck against the carriage and horse of the defendant." And while in the Stephenson case by way of dictum it was suggested that such a complaint might be vulnerable to a special demurrer subsequent cases have held that it is not (*Cunningham* v. *Los Angeles Ry. Co.,* 115 Cal. 561 [47 Pac. 452]; *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663]). In effect the complaint alleges that respondent negligently permitted the mules to be at large and that by reason of such negligence plaintiff without negligence on his part was by said mules thrown down. We think this is sufficient.

In *Mix* v. *Yoakum,* 200 Cal. 681, at 687 [254 Pac. 557], the Supreme Court says: "The defendants insist upon the application of the rule that a pleading must be taken most strongly against the pleader. This rule received recognition in the earlier cases [citing cases] and the old rule seems to have received some, but we think, ill-considered notice in *Silvers* v. *Grossman,* 183 Cal. 696 [192 Pac. 534], where, on page 702, a quotation from *Joseph* v. *Holt* [37 Cal. 250], *supra,* is set forth. Since the enactment of section 452 of the Code of Civil Procedure in 1872 it has been generally recognized that in the construction of a pleading for the purpose of determining its effect 'its allegations must be liberally construed, with a view to substantial justice between the parties.' "

No case relied on by respondent dealt with a pleading at all similar to the one here.

Judgment reversed, with directions to the trial court to overrule the demurrer.

Tyler, P. J., and Knight, J., concurred.